Frank H. Drummond *vs.* Charles L. Griffin.

Penobscot.   Opinion October 21, 1915.

*Extinguishing Lien.   Knowledge.   Lien.   Mortgage.   Relinquishment of*
*Possession.   Replevin.   Revesting the Lien.*

The defendant, under a contract, furnished food and shelter for a pair of horses for the mortgagor for several months before the date of the execution and record of the mortgage on the horses. The mortgagee had neither actual nor implied knowledge that the horses were boarded at the defendants stable for more than three months after the date of the mortgage. In the meantime, the laundry company was permitted to use the horses in the ordinary way in the prosecution of its business as well after the date of the mortgage as before. The horses were also boarded by the defendant about three months after the plaintiff had knowledge that they were being furnished food and shelter by the defendant. At this time the plaintiff demanded possession of the horses but the defendant refused to deliver them unless the plaintiff paid for their keeping, not only after but before the mortgage was given.

*Held:*

1. That the letting of the horses go out of the defendant's custody into that of the mortgagor against the plaintiff's right as owner, under a recorded mortgage, was such a relinquishment of possession as extinguished and discharged the defendant's lien up to the time the plaintiff had notice that they were being kept by the defendant.

2. That the defendant could not be held for the sum demanded for keeping the horses prior to the date of his knowledge of their being kept by the defendant.

3. That by demanding the whole and refusing to take a less sum, the plaintiff was excused from making a tender of the amount which might have been due subsequent to the date of his knowledge of the keeping.

4. That the plaintiff having title in the horses had a right to their custody without further ceremony.

On report.   Judgment for plaintiff.

This is an action of replevin for two horses claimed by plaintiff by virtue of a mortgage dated and recorded January 8, 1914. The defendant claims a lien on said horses for feeding and sheltering them. Plea, general issue with brief statement, in which it is alleged

that defendant held said horses in his possession to enforce his said lien. At the conclusion of the evidence, the case was reported to the Law Court for determination, upon so much of the evidence as is legally admissible; the court to determine all questions of law and fact and render judgment accordingly.

The case is stated in the opinion.

*Morse & Cook,* for plaintiff.

*B. W. Blanchard,* for defendant.

SITTING: SAVAGE, C. J. SPEAR, CORNISH, BIRD, HALEY, PHIL-BROOK, JJ.

SPEAR, J. On report. The case shows that the Franklin Laundry Company of Bangor, on April 11th, 1913, took one horse, and at a subsequent date, another horse, to the stable of Charles L. Griffin, the defendant, under a contract for food and shelter. The horses remained, under the contract, in the defendant's stable until July 20, 1914. Upon this date they were replevied by the plaintiff by virtue of a title conveyed to him by a mortgage from the laundry company to him, dated and recorded January 8th, 1914. No question can be raised as to the plaintiff's right of action, for a breach of the condition of the mortgage. Accordingly the only issue is, whether the defendant had, at the date of the replevin, preserved his lien.

It is admitted that the plaintiff had no actual knowledge that the horses were boarded at the defendant's stable, until April 18, 1914. Nor do we think knowledge can be implied. During all the time the horses were kept in the stable, the laundry company was permitted to use them in the ordinary way in the prosecution of its business. They were used before and after the date of the mortgage in the same way. The issue then is: Did the defendant at the time the horses were replevied have a lien on them for the amount due for their board, which accrued prior to the date of the mortgage? It seems to be well settled that he did not. The taking of the horses, by the company for use in its business, from day to day, while, for the time being, depriving the defendant of his lien, would, nevertheless, revest him in his lien upon the restitution of the horses to his custody for a continuation of food and shelter, under his existing contract for so doing; but this rule does not apply

in case of a mortgagee with whom no such contract exists, and without notice. By the mortgage to him the plaintiff acquired a good title to the horses, subject to the defendant's lien. But, after this time the defendant let the horses go out of his custody into that of the company. This, against the plaintiff's right as owner, under a recorded mortgage, was such a relinquishment of possession as extinguished and discharged the defendant's lien. The theory is, that the surrender of the lien temporarily by the defendant, gives the mortgagee a prior right, which from that time on continues without interruption or discharge. *Perkins* v. *Boardman,* et al., 14 Gray, 481, seems to be directly in point. In this case the presiding Justice ruled, under a contract between the owner and keeper of the horse, that the keeper should have a lien on the horse until "she had eaten herself up," although used from day to day in the laundry business, that the temporary relinquishment of custody for the purpose of use, did not defeat the lienor's right against a mortgage. But the court held otherwise, stating that permission to the mortgagor to take the horse into his possession and use it as he pleased in carrying on his business "as againt the plaintiff having rights under his duly recorded mortgage was such a relinquishment of possession as extinguished and discharged the previously existing lien. The mortgage then became prior in right and the incumbrance created by it continued without interruption, disturbance or discharge from and after the time when this lien was lost; and the mortgagee thereby acquired a paramount right and title to the property."

Upon April 18th, as before stated, the plaintiff had knowledge that the horses in which he held title under his mortgage were being boarded at the defendant's stable from which his consent that they might be so boarded might be properly implied. But when the plaintiff demanded the horses under his mortgage just prior to July 20, the date of his writ, upon inquiry as to the amount due, the defendant claimed not only the amount due for keeping the horses subsequent to April 18th, when the plaintiff may be regarded as having consented to their being kept by the defendant, but also the full amount due for keeping prior to that date and refused to accept any less sum.

As before determined, it appears that the plaintiff could not be held for the sum demanded for keeping the horses prior to April

18th. The defendant refused to deliver the horses to the plaintiff on demand unless he paid this sum. The plaintiff was, therefore, excused from making any tender of the amount which might have been due subsequent to April 18th before serving his writ. *Bowden v. Dougan,* 91 Maine, 141. The plaintiff, accordingly, having title in the horses, had a right to their custody without further ceremony.

*Judgment for the plaintiff.*